484 A.2d 646

**Ralph C. BEHNING, et ux.**

**v.**

**CAMELBACK SKI CORPORATION.**

**No. 225, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 7, 1984.

Certiorari Granted April 29, 1985.

14

Philip O. Foard, Towson (Dennis F. O'Brien, and White, Mindel, Clarke & Hill, Towson, on brief), for appellants.

Barrett W. Freedlander and Paul W. Grimm, Baltimore (Stephen P. Kling and Niles, Barton & Wilmer, Baltimore, on brief), for appellee.

Argued before WEANT, ROSALYN B. BELL and KAR-WACKI, JJ.

ROSALYN B. BELL, Judge.

Ralph Behning, a Maryland resident, was rendered quadriplegic as a result of injuries he sustained while skiing at the Camelback Ski Area in Tannersville, Pennsylvania. Behning and his wife brought suit in the Circuit Court for Baltimore County against Camelback Ski Corporation, the Pennsylvania corporation which owns and operates the ski area.

Camelback challenged the court's jurisdiction by filing a Motion Raising Preliminary Objections.[1] The court denied Camelback's motion finding that Camelback had sufficient contacts with Maryland to assert personal jurisdiction under Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(4) (1984 Repl. Vol.), consistent with the requirements of the Due Process Clause of the Fourteenth Amendment.

Camelback moved for reconsideration of the court's factual findings and conclusions. In an Amended Memorandum Opinion, the court reaffirmed its earlier findings regarding Camelback's contacts with the forum, but under the particular circumstances, granted Camelback's motion. The court based its decision on its analysis that even though Camelback had contacts which put it within the purview of the long arm statute, they did not amount to the fairly extensive contacts required by due process.

The Behnings appeal this determination. The question for our review is whether appellee's activities in Maryland are sufficient to subject it to the jurisdiction of our courts on a statutory and constitutional due process basis.

## STATUTORY BASIS OF JURISDICTION

Appellants seek to establish jurisdiction over appellee under § 6–103(b)(4), *supra*, of the Maryland long arm statute which provides that:

"(b) *In general*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

\* \* \* \* \* \*

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;"

---

**1.** Camelback also challenged the sufficiency of service. That issue, however, has not been pursued on appeal.

■ To assert jurisdiction under § 6–103(b)(4), *supra,* the court must find that the defendant's activities in the State met the statutory requirements either when the suit was filed, *Carter v. Massey,* 436 F.Supp. 29, 35 (Dist.Ct.Md. 1977), or when the cause of action arose. *Geelhoed v. Jensen,* 277 Md. 220, 233, 352 A.2d 818 (1976).

■ The court found that appellee's conduct in the forum, at the time the suit was filed, was sufficient to submit it to the jurisdiction of the Maryland courts. This included: advertising in national and regional publications disseminated in Maryland; maintaining a toll free number for Maryland residents; distributing ski information and brochures to Maryland residents and businesses; and sending a representative into Maryland to explore new marketing possibilities. Further, the court found that these activities satisfied both the first and second prongs of § 6–103(b)(4); that is, they amounted to the "regular solicitation of business" and to "a persistent course of conduct in the State." The court did not find that appellee derived revenue from products used or consumed in the State, which would have satisfied the third prong. Appellee's contacts with Maryland need only have satisfied one of the three prongs of § 6–103(b)(4) to establish *in personam* jurisdiction.

■ Appellee contests the factual findings of the court and asserts that information about its ski area contained in publications distributed in Maryland represents the unilateral activity of third parties and that maintenance of its toll free number for Maryland residents was also the unilateral conduct of another party. It concludes that these actions should not be considered contacts with this State. It is true that the independent activity of another party cannot satisfy the requirement of contact between appellee and the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* ——— U.S. ———, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). The activities from which appellee here attempts to disassociate itself, however, were undertakings in which it played an active role.

■ The standard this Court applies in reviewing the trial court's factual findings is whether the court was clearly erroneous. Md.Rule 1086. Thus, we will only arrive at a different factual conclusion if our review indicates that the court was clearly erroneous in its fact finding. *Simko, Inc. v. Graymar Co.*, 55 Md.App. 561, 464 A.2d 1104 (1983).

■ The record supports the court's finding that appellee advertised in national and regional publications distributed in Maryland. Appellee claims that information about its ski area contained in publications such as *Ski Resorts Magazine* did not constitute advertising by the ski resort because magazine staff wrote the copy and the information was published with no charge to appellee. In this context, however, appellee neglects to mention that it provided the information used by magazine staff. As the Supreme Court stated in *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980), an out-of-state defendant may serve or seek to serve the market in the forum state either directly or indirectly through others. Appellee's cooperation in providing information to publications like *Ski Resorts Magazine* was an effort to serve the market indirectly and thus a contact with the State.

Appellee also directly sought to serve the Maryland market through maintenance of its toll free number and distribution of its brochures in Maryland. Although appellee claims that this service to the State was unavoidably included in its purchase of a toll free number, the record shows that appellee advertised in brochures the existence of this number for Maryland residents. Additionally, appellee claims that it sent its brochures to Maryland ski shops only at their request. What was significant was not the request, but that appellee did in fact intentionally send its brochures into Maryland.

Our review of the record demonstrates that the court was not clearly erroneous in its findings of fact. Md.Rule 1086. We, therefore, concur in that part of the court's ruling.

## DUE PROCESS REQUIREMENTS

██ It is well established that the Legislature's intent in adopting Md.Cts. & Jud.Proc.Code Ann. § 6–103, *supra,* was to extend *in personam* jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *Krashes v. White,* 275 Md. 549, 559, 341 A.2d 798 (1975); *Geelhoed v. Jensen,* 277 Md. at 224, 352 A.2d 818. The terms contained in § 6–103(b)(4), therefore, derive their meaning from and are coextensive with the principles of due process enunciated by the Supreme Court in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Geelhoed v. Jensen,* 277 Md. at 227, 352 A.2d 818; *McKown v. Criser's Sales & Service,* 48 Md.App. 739, 744, 430 A.2d 91 (1981).

The due process standard of "minimum contacts" was first stated in *International Shoe Co., supra,* as follows:

"... due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have *certain minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (emphasis added).

326 U.S. at 316, 66 S.Ct. at 158.

██ The "minimum contacts" standard, as further refined by the case law, requires that we balance the following factors to determine whether the assertion of jurisdiction is consistent with due process: (1) the source of the action; that is, whether this is a case of specific or general jurisdiction, *Geelhoed v. Jensen,* 277 Md. at 230, 352 A.2d 818; *Carter v. Massey,* 436 F.Supp. at 33; (2) the nature and quality of appellee's contacts with the State, *Id., Ratliff v. Cooper,* 444 F.2d 745, 747 (1971); (3) the State's interest in providing a forum for the cause of action, *Geelhoed v. Jensen, supra; Carter v. Massey, supra;* and (4) the convenience of the parties. *Id.*

### 1. Source of the Action

First we must determine whether the source of the action is within the specific or general jurisdictional powers of the State.

The State exercises specific jurisdiction where the cause of action arises out of or is related to the out-of-state defendant's activities in the forum. Since the relationship among the defendant, the State and the litigation is the basis upon which such jurisdiction is asserted, the defendant need not have other contacts with the State. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, —— U.S. at ——, 104 S.Ct. at 1872. Alternatively, where the suit does not arise out of the defendant's conduct in the forum, the State may exercise its powers of general jurisdiction so long as the out-of-state defendant has sufficient independent contacts. If the defendant has such contacts, maintenance of the action does not violate due process. *Id.*

Appellants' alleged injuries did not arise out of appellee's contacts with Maryland.[2] The source of this action is, therefore, within the State's general jurisdictional powers.

### 2. Nature and Quality of Appellee's Contacts

Next we must determine whether appellee's contacts with Maryland are sufficient to meet the requirements of due process.

In a case such as the one *sub judice*, due process requires that appellee have "continuous and systematic" contacts with the State. *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra; Geelhoed v. Jensen, supra.* This Court has described the required contacts in a case of general jurisdiction in the following way:

---

**2.** Appellants' Declaration alleged that they had traveled to Camelback ski area in response to commercial solicitation. The deposition testimony was ambiguous, however, regarding whether appellants had seen a Camelback brochure or other advertising prior to going to the ski area. On appeal, appellants conceded that their trip to Camelback had not been triggered by appellee's solicitation in Maryland.

"While *in personam* jurisdiction thus may be obtained over an out-of-state defendant even where the alleged injury has occurred outside Maryland, in such a case due process requires 'other contacts between the [defendant] and the state [to] be *fairly extensive* before the burden of defending a suit there may be imposed ... without offending 'traditional notions of fair play and substantial justice.' " *Lewron Tel. v. Int'l All. of Th. St. Emp.*, 37 Md.App. 662, 666 [378 A.2d 728] (1977) quoting F. James *Civil Procedure* 640 (1965).

The contacts required by due process are coextensive with the provisions of § 6–103(b)(4). *Geelhoed v. Jensen*, 277 Md. at 227, 352 A.2d 818; *McKown v. Criser's Sales & Service, supra.* As we discussed earlier, the conduct in the present case meets those statutory requirements.

Our review of these activities indicates that appellee directly sought to provide information to Maryland residents by maintaining a toll free number and by including this number in its brochures which it distributed to Maryland ski shops. Indirectly, through national and regional publications distributed in this State, appellee also provided information about its ski area to Maryland residents. Appellee sent an agent into Maryland for the express purpose of exploring new marketing possibilities. We conclude that appellee's activities, taken as a whole, are sufficiently continuous and systematic to meet the requirements of due process.

### 3. State Interest

The State's interest in providing a forum for its citizens plays a legitimate role in the balancing process.

One appellant, a Maryland resident, was seriously injured outside the State by the alleged act or omission of appellee. Because this appellant's injuries rendered him quadriplegic, he may need to utilize resources of this State for his care and maintenance. Further, the appellants have alleged harm to the marital entity, the situs of which is

Maryland. This State has a special interest in the domestic relations of its citizens and in entertaining a suit to remedy alleged wrongs to those relations. *Geelhoed v. Jensen,* 277 Md. at 233, 352 A.2d 818.

### 4. Convenience of the Parties

We note at the outset that appellee has made no allegations as to any inconvenience it would suffer by litigating in this forum. Appellee is located in Tannersville, Pennsylvania which is less than 170 miles away from Towson, where the circuit court sits. The appellant and, we infer, the major medical witnesses likely to be called on the question of damages are in Maryland.

## CONCLUSION

▮▮▮ The appellate courts of Maryland have not previously determined whether the long arm statute applies to an out-of-state hotel or recreational facility.[3] Both parties refer to cases from other jurisdictions, and appellee relies on them heavily in asserting the lack of sufficient contacts in the present case for this forum to exercise personal jurisdiction. We do not consider these authorities sufficiently persuasive. Rather, we base our decision on existing Maryland case law.

The State is called upon here to assert its general jurisdictional powers. Appellee must, therefore, have sufficient independent contacts with Maryland. Appellee's contacts herein are continuous and systematic. Furthermore, the State's interest is strong since one appellant, a Maryland resident, was seriously injured, and the marital entity, the situs of which is Maryland, was alleged to have suffered injury. Finally, whatever inconvenience appellee would suffer from being forced to litigate in Maryland appears to be minimal. Thus, we conclude that maintenance of this action

---

**3.** The United States District Court in the case of *Greenwood v. Tides,* 504 F.Supp. 992 (Dist.Ct.Md.1980), did apply the Maryland long arm statute to an out-of-state resort.

is consistent with the requirements of due process. Appellee's motion raising preliminary objections should have been denied.

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

APPELLEE TO PAY COSTS.